**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| CHECKINSOONER.COM, LLC | § | |
| and NEVILLE AGA | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**COMES NOW,** Plaintiff Southwest Airlines Co. ("Southwest"), and brings this action against Defendants CheckinSooner.com, LLC ("CheckinSooner") and Neville Aga ("Aga") (collectively "Defendants") for injunctive relief and damages under the laws of the United States and the State of Texas and states as follows:

### I.   NATURE OF THE ACTION

1.   Southwest operates the web site, SOUTHWEST.COM, through which it provides online travel reservation services, online flight check-in, and related services. SOUTHWEST.COM is one of the countries' most visited travel web sites, with nearly 30 million visits per month. Over eighty percent of Southwest's bookings are made through SOUTHWEST.COM, and a significant percentage of Southwest customers use SOUTHWEST.COM for online flight check-in. The smooth and secure operation of the web site is vital to Southwest and to the people who rely on the airline's online service offerings.

2. In disregard of web site access restrictions implemented by Southwest to protect the smooth and secure operation of its web site, Defendants design, operate and sell a flight check-in tool that, through an automated process, manipulates and circumvents Southwest's authorized online check-in procedures. Defendants profit from the sale of this tool at the expense of Southwest and to the detriment of Southwest's customers.

3. Southwest seeks injunctive relief and monetary damages against Defendants based on Defendants' unauthorized use of Southwest's web site in connection with Defendants' operation of a travel services business in which they, without Southwest's permission, sell to Southwest's customers online check-in and boarding pass retrieval for Southwest flights. Despite requests from Southwest that Defendants cease these wrongful activities, Defendants persist in this conduct. As a result, Southwest has suffered, is suffering, and unless preliminary and permanent relief is entered by this Court, will continue to suffer ongoing harm due to Defendants' conduct alleged herein.

## II. PARTIES

2. Southwest is a Texas corporation with its principal place of business in Dallas, Texas. Southwest conducts substantial business operations at the Dallas Love Field Airport.

3. CheckinSooner is a limited liability company formed and existing under the laws of the State of Oklahoma with its principal place of business on the internet, at www.Checkinsooner.com, and a physical address at 4028 Sam Gordon, Norman, Oklahoma 73072.

4. Aga is a natural person residing in the State of Oklahoma at 4028 Sam Gordon, Norman, Oklahoma 73072.

5. Aga is the registrant for the Checkinsooner.com domain name.

6. Southwest is informed and believes, and on that basis alleges, that Aga is the primary, if not the sole director and employee of CheckinSooner.

7. Southwest is informed and believes, and on that basis alleges, that Aga is the alter ego of Checkinsooner.com.

8. Southwest is informed and believes, and on that basis alleges, that Aga is wholly responsible for the wrongdoing alleged herein.

### III. JURISDICTION

9. This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 because certain of Southwest's claims arise under 18 U.S.C. § 1030.

10. This Court has supplemental jurisdiction over the claims in this Complaint that arise under the law of the State of Texas pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

11. In addition, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. This controversy is between citizens of different states, and the amount in controversy exceeds and/or the value of the right sought to be protected by the injunction exceeds $75,000.

12. This Court has personal jurisdiction over Defendants because they purposefully directed their unlawful acts to this forum, knew that the injury from their unlawful acts would be felt primarily by Southwest in this judicial district, and have continuously and systematically conducted business in this judicial district.

13. Upon information and belief, Defendants have purposefully availed themselves to the forum by entering into one or more contracts with residents of the State of Texas knowing that they would receive commercial gain through such contracts.

14. Upon information and belief, the entirety of Defendants' business is the operation of the internet web site located at www.checkinsooner.com ("CHECKINSOONER.COM"). Defendants intentionally direct commercial activity to residents of Texas, including residents of this judicial district, through their web site.

15. Upon information and belief, Texas consumers interact with Defendants by requesting that CheckinSooner obtain boarding passes for airline flights originating from and arriving at airports in Dallas and other major airports in Texas served by Southwest.

16. Upon information and belief, Defendants collect personal and payment information from Texas residents purchasing Defendants' services.

17. Upon information and belief, Defendants direct their business activities to residents of Texas knowing that they will receive commercial gain from selling their services to Texas residents. In fact, Defendants have, in the past, placed promotional flyers for the services complained of herein at Southwest's gate areas and travel centers located at Love Field.

18. Upon information and belief, Defendants knew that the injury from their unlawful acts would be felt primarily by Southwest in this judicial district, where Southwest is incorporated and headquartered, and where it originates numerous flights every day for Texas residents.

19. Moreover, in order to perpetrate the wrongful acts alleged in this complaint, Defendants regularly access Southwest's computer servers which are located in this judicial district.

20. Finally, the Terms and Conditions of Use governing SOUTHWEST.COM require Defendants submit to the jurisdiction of the courts within Dallas, Texas for disputes relating to the Terms and Conditions of Use that are the subject of this lawsuit.

21. All of CheckinSooner's contacts with Texas and this judicial district are imputed to Aga under the doctrine of piercing the corporate veil. Moreover, Aga has personally committed some of all of the conduct alleged against CheckinSooner and he is subject to personal jurisdiction in this judicial district based on his own personal conduct and contact with this judicial district.

## IV. Venue

22. Venue lies properly in this Court pursuant to 28 U.S.C. § 1391(b) because the claims alleged in this action arose in this judicial district; a substantial part of the activities, conduct and/or damages occurred in Texas; and Defendants have substantial contacts with this judicial district.

23. The Terms and Conditions of Use governing Defendants' access to and use of SOUTHWEST.COM provide that courts located within Dallas, Texas shall have exclusive jurisdiction over the relationship between Southwest and Defendants for disputes relating to the Terms and Conditions of Use.

## V. Facts Giving Rise To This Action

**A.   Southwest and the Terms & Conditions Governing Its Web site**

24. Southwest owns and operates the SOUTHWEST.COM web site.

25. In order to protect the security of its web site and to ensure the normal operation of its web site for use by Southwest's valued customers, Southwest subjects use of SOUTHWEST.COM to certain terms and conditions (the "Terms and Conditions of Use").

26. Southwest's Terms and Conditions of Use are available by clicking a clearly marked link which appears on the SOUTHWEST.COM home page as well as on the internal pages of the web site.

27. A true and correct copy of the current Terms and Conditions of Use for the SOUTHWEST.COM web site is attached hereto as **Exhibit A**.

28. Among other things, the Terms and Conditions of Use prohibit:

- use [of] Southwest's Sites for or in connection with offering any third party product or service not authorized or approved by Southwest. For example, online check-in service providers may not use Southwest web pages to check-in Customers online or attempt to obtain for them a boarding pass in any certain boarding group;

- use [of] any deep-link, page-scrape, robot, crawl, index, spider, click spam, macro programs, Internet agent, or other automatic device, program, algorithm or methodology which does the same things, to use, access, copy, acquire information, generate impressions or clicks, input information, store information, search, generate searches, or monitor any portion of the Southwest Airlines Sites or Company Information; and

- use [of] the Southwest Airlines Sites in any way which depletes web site infrastructural resources, slows the transferring or loading of any web page, or interferes with the normal operation of [Southwest's] site.

29. The home page of the SOUTHWEST.COM web site as well as the Terms and Conditions of Use conspicuously state that use of the web site constitutes acceptance of Southwest's Terms and Conditions of Use.

B.  **Southwest's Check-in & Boarding Procedures**

30. Southwest maintains certain policies regarding check-in and boarding for its flights in order to promote a fair and expeditious seating process.

31. Southwest has an "open seating" policy whereby a passenger selects an available seat upon boarding the plane, rather than having a seat pre-assigned by Southwest.

32. Beginning 24 hours prior to scheduled departure and up to one hour before departure, customers with eligible reservations may check-in online for their flight from Southwest's web site, SOUTHWEST.COM.

33. Customers are placed into the A, B, or C boarding groups based on the time of check-in. In addition, customers are assigned a position within that group representing a reserved spot in the boarding group at the gate.

34. With limited exceptions, a customer who checks in at the earliest possible time during the 24 hours prior to departure, will be assigned a boarding position that allows that customer to board and select a seat prior to a customer who checked in later in the pre-departure period.

35. Customers who wish to have an option for an improved boarding position and/or automatic check-in may purchase such services from Southwest.

C.  **Defendants' Wrongful Conduct**

36. Without Southwest's authorization, Defendants sell a subscription service where, for a fee, Defendants provide their clients with an automatic check-in service for Southwest flights.

37. More specifically, Defendants provide technology that is aimed at manipulation and circumvention of Southwest's authorized check-in procedures.

38. When using Defendants' technology, Defendants' clients do not visit SOUTHWEST.COM in their individual capacity as would a Southwest customer who visits the web site to use Southwest's authorized online check-in services.

39. Rather Defendants' clients register their information with Defendants, pay a fee, and Defendants provide proxy server technology that acts as an intermediary between the client's computer and SOUTHWEST.COM.

40. Defendants' proxy server technology facilitates access to SOUTHWEST.COM by an automatic device, program, algorithm or methodology which monitors a portion of SOUTHWEST.COM, acquires information, and generates a check-in procedure, as if the client had visited SOUTHWEST.COM in person at the very beginning of the pre-departure check-in time window.

41. Thus, Defendants' proxy server technology puts Defendants' clients in front of Southwest's customers who check-in through Southwest's authorized check-in procedures, despite the fact that Defendants' clients never personally visit SOUTHWEST.COM to check-in.

42. Defendants' clients obtain their Southwest boarding passes in emails sent by Defendants.

43. Customers who utilize Defendants' service do not personally visit SOUTHWEST.COM to check-in online.

44. The nature of Defendants' service is to divert visits from SOUTHWEST.COM.

45. By directing online traffic from SOUTHWEST.COM to CHECKINSOONER.COM, Defendants deprive Southwest of selling and advertising opportunities and interfere with the purchasing cycle of Southwest customers.

46. Defendants are also offering an unauthorized automatic check-in service that competes with Southwest's own automatic check-in service.

47. Defendants are well aware of the Terms & Conditions that govern the use of SOUTHWEST.COM and of Southwest's objection to Defendants' offering of unauthorized check-in services.

48. In fact, Defendants had previously represented to Southwest that they had ceased offering a check-in tool to Southwest's customers.

49. Although Defendants have purposely sought to conceal their conduct from Southwest, Southwest is informed and believes, and on that basis alleges that Defendants have reverted to business activities that violate Southwest's Terms and Conditions of Use.

50. Upon information and belief, Defendants' CHECKINSOONER.COM web site receives anywhere from several hundred to several thousand visitors per month.

51. Upon information and belief, a significant number of the visits to CHECKINSOONER.COM are made by Southwest customers who, but for Defendants' provision of an unauthorized automatic check-in service, would have visited SOUTHWEST.COM to utilize Southwest's authorized online check-in services or would have purchased Southwest's automatic check-in services.

52. As such, Southwest has suffered and will continue to suffer irreparable harm and economic injury as a result of Defendants' wrongful activities.

### COUNT I
### 18 U.S.C. § 1030: FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS

53. Southwest repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 52, inclusive.

54. Southwest's computers, on which SOUTHWEST.COM and Southwest's online check-in system reside, are involved in interstate commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

55. Upon information and belief, Defendants have intentionally accessed and continue to access Southwest's computers without authorization or in excess of authorized access, and through interstate communication, obtained information from Southwest's computers in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C).

56. Defendants' unauthorized access of a protected computer has caused damage and is continuing to cause damage to Southwest, including loss arising from the cost of responding to and investigating Defendant's unauthorized access, which has amounted in an aggregated loss of at least $5,000 during a one year period.

57. Defendants' conduct has harmed and will continue to harm Southwest. As a result, Southwest has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained.

58. Southwest's remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.

59. Southwest is entitled to damages and injunctive relief under CFAA, 18 U.S.C. § 1030(g).

### COUNT II
### BREACH OF CONTRACT

60. Southwest repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 59, inclusive.

61. Defendants entered into a valid contract or contracts with Southwest by using Southwest's web site SOUTHWEST.COM in acceptance of its Terms and Conditions of Use.

62. The Terms and Conditions of Use prohibit:

- use [of] Southwest's Sites for or in connection with offering any third party product or service not authorized or approved by Southwest. For example, online check-in service providers may not use Southwest web pages to check-in Customers online or attempt to obtain for them a boarding pass in any certain boarding group;

- use [of] any deep-link, page-scrape, robot, crawl, index, spider, click spam, macro programs, Internet agent, or other automatic device, program, algorithm or methodology which does the same things, to use, access, copy, acquire information, generate impressions or clicks, input information, store information, search, generate searches, or monitor any portion of the Southwest Airlines Sites or Company Information; and

- use [of] the Southwest Airlines Sites in any way which depletes web site infrastructural resources, slows the transferring or loading of any web page, or interferes with the normal operation of [Southwest's] site.

63. The Terms and Conditions of Use also provide, "[b]y using Southwest Sites in any manner, you accept and agree to be bound by this Use Agreement."

64. Defendants are on actual notice of the Terms and Conditions of Use.

65. Southwest has performed all of the conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contract.

66. Defendants have repeatedly breached the contract by using Southwest's web site to check-in customers online and/or to attempt to obtain for customers a boarding pass in a certain boarding group.

67. Defendants' have also repeatedly breached the contract through deployment of proxy server technology which constitutes use on an automatic device, program, algorithm or methodology to use, access, copy, acquire information, generate impressions or clicks, input information, store information, search, generate searches, or monitor a portion of the SOUTHWEST.COM web site.

68. Defendants' also breach the contract because their continual deployment of proxy server technology reduces the web site resources of SOUTHWEST.COM.

69. As a direct result of Defendants' breaches, Southwest has sustained general and special damages in a sum to be proved at trial.

70. Southwest has suffered and will continue to suffer losses and irreparable injury due to Defendants' breaches. Defendants are likely to continue to commit such breaches and, unless restrained and enjoined, will continue to do so, all to Southwest's irreparable injury. Southwest's remedy at law is not by itself adequate to compensate it for the injuries inflicted and threatened by Defendants.

71. Southwest is entitled to injunctive relief to prevent Defendants from engaging in conduct prohibited by the Terms and Conditions of Use, as well as damages.

### COUNT III
### INDUCING BREACH OF CONTRACT

72. Southwest repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 71, inclusive.

73. The Terms and Conditions of Use for SOUTHWEST.COM constitute a valid and existing contract between Southwest and SOUTHWEST.COM users.

74. Defendants had knowledge of the Terms and Conditions of Use and of the valid and existing contract between Southwest and SOUTHWEST.COM users created by the Terms and Conditions of Use.

75. Defendants intended to induce their clients, who are also users of SOUTHWEST.COM, to breach their contract with Southwest, and actively took steps to cause the breach.

76. Users who were induced to utilize Defendants' online check-in services did in fact breach the Terms and Conditions of Use by using an automatic device, program, algorithm or to use, access, copy, acquire information, generate impressions or clicks, input information, store information, search, generate searches, or monitor a portion of SOUTHWEST.COM.

77. These breaches of the Terms and Conditions of Use were caused by Defendants' unjustified and wrongful conduct.

78. Defendants' conduct has damaged Southwest, and caused and continues to cause irreparable harm and injury to Southwest.

79. Southwest is entitled to injunctive relief to prevent Defendants from continuing to induce breach of the Terms and Conditions of Use, as well as damages.

## COUNT IV
## HARMFUL ACCESS BY COMPUTER

80. Southwest repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 79, inclusive.

81. Defendants violated § 33.02 of the Texas Penal Code by knowingly, and without effective consent, accessing Southwest's computer network or system. Southwest has been harmed by such illegal conduct.

82. Pursuant to § 143.001 of the Texas Civil Practice and Remedies Code, Defendants' knowing and intentional violations of § 33.02 of the Texas Penal Code make them liable in a civil action for harmful computer access of Southwest's computer network or system.

## COUNT V
### PIERCING THE CORPORATE VEIL/JOINT AND SEVERAL LIABILITY

83. Southwest repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 82, inclusive.

84. Upon information and belief, CheckinSooner does not exist as an actual corporate entity. Aga uses the alleged entity as a front to operate his business.

85. The Court should disregard the corporate fiction and hold Aga personally liable and jointly and severally liable for the conduct of Defendants.

86. CheckinSooner is and, at all times relevant to Southwest's claim, has been the alter ego of Aga. This entity was organized and is operated as a mere tool or business conduit of Aga.

87. Defendants are and at all times relevant to Southwest's claims were engaged in a joint venture, joint enterprise, and/or single business enterprise.

## COUNT VI
### ATTORNEYS' FEES

88. Southwest repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 87, inclusive.

89. Southwest has been required to retain the services of the undersigned attorneys in the prosecution of this claim. Pursuant to § 38.001 and § 143.002 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, Southwest seeks to recover its attorneys' fees and costs expended in prosecuting this matter since such an award would be equitable and just under the circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, Southwest respectfully requests judgment as follows:

(1)  That the Court enter judgment against Defendants that they have:

   (a)  committed and is committing a violation of 18 U.S.C. § 1030;

   (b)  breached its contract with Southwest regarding use of SOUTHWEST.COM;

   (c)  induced other users to breach their contract with Southwest for use of SOUTHWEST.COM;

   (d)  caused and is causing harmful access to Southwest's computer system in violation of § 33.02 of the Texas Penal Code; and

   (e)  otherwise injured the business reputation and business of Southwest by the acts and conduct set forth in this Complaint.

(2)  That the Court issue preliminary and permanent injunctive relief against Defendants, and that Defendants and any and all others in active concert or participating with Defendants be enjoined and restrained from:

   (a)  using SOUTHWEST.COM or any Southwest web site for the purpose of checking in Southwest customers and obtaining boarding passes for Southwest customers in exchange for a fee;

   (b)  accessing Southwest's computer system in violation of 18 U.S.C. § 1030;

   (c)  breaching or inducing breach of any of the Terms and Conditions of use of SOUTHWEST.COM or any other web site operated by Southwest;

   (d)  accessing, without effective consent, Southwest's computer network or system in violation of § 33.02 of the Texas Penal Code; and

(e) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above.

(3) That the Court order Defendants to pay Southwest's general, special, actual, compensatory, incidental, consequential, punitive, statutory and exemplary damages as follows:

(a) Southwest's damages as a result of Defendants' unauthorized access to Southwest's computer system in violation of 18 U.S.C. § 1030;

(b) Southwest's damages as a result of Defendants' breaching its contract with Southwest for use of SOUTHWEST.COM;

(c) Southwest's damages as a result of Defendants' inducing users to breach their contract with Southwest for use of SOUTHWEST.COM;

(d) Southwest's damages for Defendants' violation of § 33.02 of the Texas Penal Code;

(e) Southwest's damages and Defendants' profits pursuant to Texas common law for breach of contract;

(4) That the Court order Defendants to pay to Southwest both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action; and

(5) That the Court grant to Southwest such other and additional relief as is just and proper.

Dated this 3rd day of August, 2010.

        Respectfully submitted,

        **DLA PIPER LLP (US)**

By: _____
        James R. Nelson
        Texas State Bar No. 14899800
        jr.nelson@dlapiper.com
        Jules Elese Angelley
        Texas State Bar No. 00793347
        jules.angelley@dlapiper.com

1717 Main Street, Suite 4600
Dallas, Texas 75201
(214) 743-4500 (telephone)
(214) 743-4545 (facsimile)

**COUNSEL FOR PLAINTIFF,
SOUTHWEST AIRLINES CO.**

<u>OF COUNSEL</u>:

Gina L. Durham
DLA PIPER LLP (US)
203 N. LaSalle, Suite 1900
Chicago, IL 60601
(312) 368-7246 (telephone)
(312) 251-5745 (facsimile)